UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES E. PAYTON,

        Petitioner,

                                CASE NO. 2:10-CV-15011
   v.                       CHIEF JUDGE GERALD E. ROSEN
                                MAGISTRATE JUDGE PAUL KOMIVES

MITCHELL PERRY,

        Respondent.

_____/

**REPORT AND RECOMMENDATION ON PETITIONER'S HABEAS APPLICATION
(docket #1); PETITIONER'S MOTION FOR EQUITABLE TOLLING (docket #2) and
RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (docket #11)**

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's motion for equitable tolling

(docket #2) and grant in part and deny in part respondent's motion for summary judgment (docket

#11). Specifically, the Court should conclude that all of petitioner's claims except for petitioner's

claim alleging that the trial judge failed to disclose a jury note are barred by the one year statute of

limitations contained in 28 U.S.C. § 2244(d), and that petitioner is not entitled to equitable tolling

of the limitations period with respect to these claims. With respect to the jury note claim, the Court

should conclude that petitioner is entitled to a delayed commencement of the limitations period

pursuant to 28 U.S.C. § 2244(d)(1)(D), and thus that the claim is timely. However, with respect to

this claim, the Court should deny the claim on the merits. If the Court accepts these

recommendations, the Court should also deny petitioner a certificate of appealability.

II.     <u>REPORT</u>:

A.     *Procedural Background*

        Petitioner Charles E. Payton is a state prisoner, serving a sentence of 18-40 years'

imprisonment imposed as a result of his 2005 state court convictions for second degree murder, assault with intent to do great bodily harm less than murder, and possession of a firearm during the commission of a felony. Petitioner's application and the state court record reveal the following time line of the state court proceedings:

- Petitioner was convicted on July 1, 2005, following a jury trial in the Wayne County Circuit Court. On July 18, 2005, he was sentenced by the court.

- Petitioner filed an application for leave to appeal in the Michigan Court of Appeals raising, through counsel, two claims challenging the sufficiency of the evidence. Petitioner also filed a *pro per* supplemental brief, raising claims that (1) the trial court erred in failing to respond to the jury's request for clarification of the self-defense instruction; (2) the prosecution failed to exercise due diligence in attempting to locate two *res gestae* witnesses; and (3) trial counsel was ineffective for failing to (a) call witnesses to support his claim of self defense, (b) impeach prosecution witnesses, and (c) properly object to the trial court's inadequate clarification of the self-defense instruction. On December 21, 2006, the court of appeals affirmed petitioner's convictions. *See People v. Payton*, No. 264704, 2006 WL 3755278 (Mich. Ct. App. Dec. 21, 2006) (per curiam).

- Petitioner, proceeding *pro se*, filed an application for leave to appeal in the Michigan Supreme Court, raising the five issues he raised on direct appeal. On June 26, 2007, the Supreme Court denied leave to appeal in a standard order. *See People v. Payton*, 478 Mich. 926, 732 N.W.2d 890 (2007).

- On September 18, 2008, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.00-.508. He filed an amended motion on February 17, 2009. In his motion and amended motion, petitioner raised three claims for relief: (1) the trial court erred in failing to disclose and respond to a jury note requesting the definition of self-defense; (2) insufficiency of the evidence; and (3) newly discovered evidence that the Detroit Police Department crime laboratory may have mishandled evidence in his case. On July 15, 2009, the trial court denied the motion.

- Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals. The court of appeals denied petitioner's application in a standard order on March 31, 2010. *See People v. Payton*, No. 294440 (Mich. Ct. App. Mar. 31, 2010).

- Petitioner filed an application for leave to appeal that decision in the Michigan Supreme Court. The Supreme Court denied the application for leave to appeal on September 9, 2010. *See People v. Payton*, 488 Mich. 854, 787 N.W.2d 492 (2010).

2

On December 8, 2010, petitioner filed this application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising all of the claims that he raised in the state courts.[1]  As grounds for the writ, petitioner claims that his sentence was improper and that he was denied the effective assistance of counsel in connection with his plea.  Respondent filed a motion for summary judgment on December 22, 2010, arguing that petitioner's habeas application is untimely.  On March 21, 2011, I entered an Order requiring petitioner to file any response to the motion no later than April 29, 2011.  As of the date of this Order, no response has been filed.  For the reasons that follow, the Court should grant respondent's motion for summary judgment.[2]

B.      *Analysis*

1.      *Statutory Timeliness and Tolling*

Respondent argues that petitioner's application is barred by the one-year statute of limitations governing habeas petitions.  On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1220 (Apr.

---

[1]Although petitioner's application is file-stamped December 16, 2010, it is well-established that a habeas petition is deemed "filed" for purposes of the statute of limitations on the date the petitioner gives his motion to prison officials for mailing.  *See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997); *Beckovich v. Coyle*, 22 F. Supp. 2d 722, 723 (N.D. Ohio 1998); *cf. Houston v. Lack*, 487 U.S. 266, 270 (1988).  Petitioner's application is signed and dated December 8, 2010.  Accordingly, I assume that the petition was given to prison officials for mailing, and was thus "filed," on December 8, 2010.

[2]At the time he filed his application, petitioner was incarcerated at the Lakeland Correctional Facility in Coldwater, Michigan.  On August 19, 2010, petitioner filed a notice of change of address indicating that he had been transferred to the Brooks Correctional Facility in Muskegon Heights, Michigan, and petitioner's address on the Court's docket was changed accordingly.  According to the Michigan Department of Corrections's Offender Tracking Information System (OTIS) website, petitioner is again incarcerated at the Lakeland Correctional Facility, although no new notice of change of address has been filed by petitioner.  To ensure that plaintiff receives a copy of this Report, I have directed the Clerk to serve a copy by mail to petitioner at both the Brooks and Lakeland Correctional Facilities.

3

24, 1996).  In relevant part, the AEDPA amended 28 U.S.C. § 2244 to provide a one year statute of limitations for habeas petitions.  Specifically, the statute as amended by the AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).[3]

As the language of the statute indicates, there are four possible dates on which the limitations period may begin to run.  Assuming that the default commencement date established by subparagraph (A) applies here, petitioner's application is untimely.  Under subparagraph (A) of § 2244(d),

> a judgment of conviction does not become "final" . . . until the Supreme Court affirms the conviction and sentence on the merits or denies a timely filed petition for certiorari.
>
> In addition, if a defendant does not file a certiorari petition, the judgment of conviction does not become "final" until the time for seeking certiorari review expires.

*Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999); *see also*, *United States v. Simmonds*,

---

[3]The AEDPA codified a one-year statute of limitations provision for motions to vacate federal convictions brought under 28 U.S.C. § 2255 which is nearly identical to the one found in § 2244(d)(1). *See* 28 U.S.C. § 2255 para. 6.  Accordingly, cases discussing the § 2255 statute of limitations are applicable here.

111 F.3d 737, 744 (10th Cir. 1997) (conviction became final upon denial of certiorari); *Torres v. Irvin*, 33 F. Supp. 2d 257, 271 (S.D.N.Y. 1998) ("[A] judgment of conviction only becomes final upon the expiration of the ninety days to seek a writ of certiorari from the United States Supreme Court."); *United States v. Dorsey*, 988 F. Supp. 917, 918 (D. Md. 1998) (same); *cf. Penry v. Lynaugh*, 492 U.S. 302, 314 (1989) (for purpose of determining whether application of new rule of law would be an impermissible retroactive application to a case which has already become final, conviction becomes final upon denial of the defendant's petition for certiorari); *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").

Here, petitioner's direct appeal concluded with the Supreme Court's denial of his application for leave to appeal on June 26, 2007. Petitioner's conviction became final 90 days later when the time for seeking *certiorari* in the United States Supreme Court expired, or on September 24, 2007. Thus, the one year limitation period began running on September 25, 2007, *see* Fed. R. Civ. P. 6(a)(1)(A), and expired one year later on September 25, 2008. Because petitioner did not file his petition until December 8, 2010, it is untimely unless the limitations period was tolled for any reason.

Under § 2244(d)(2), the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" Petitioner's motion for relief from judgment was filed in the trial court on September 18, 2008. By this time, all but seven days had elapsed on the limitations clock. It is well established that subsection (d)(2) is a tolling provision and therefore a post-conviction

motion only pauses the limitations clock; it "does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.2d 13, 17 (2d Cir. 2000); *see also*, *Brooks v. McKee*, 307 F. Supp. 2d 902, 905 (E.D. Mich. 2004) (Gadola, J.). Thus, at the time the Michigan Supreme Court denied petitioner's application for leave to appeal on September 9, 2010, he had only seven days remaining in the limitations period.[4] Because petitioner did not file his habeas application until December 8, 2010, 89 days later, his application is untimely by 82 days.

### 2.      *Petitioner's Arguments*

Petitioner raises two arguments with respect to timeliness. First, with respect to the claims he raised on direct appeal, petitioner contends that he is entitled to equitable tolling of the limitations period. Second, with respect to the claims raised in his motion for relief from judgment, petitioner contends that he is entitled to a delayed starting of the limitations period pursuant to § 2244(d)(1)(D). The Court should reject each of these arguments, except with respect to petitioner's claim relating to the jury note.

### a.  *Equitable Tolling*

Petitioner contends that he is entitled to equitable tolling of the limitations period with respect to the claims he raised on direct appeal. The habeas limitations provision set forth in § 2244(d) "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). To be entitled to equitable tolling of the limitations period, petitioner "must show '(1)

---

[4]Unlike commencement of the limitations period under § 2244(d)(1)(A), which depends upon when the conviction becomes "final," tolling under § 2244(d)(2) applies only during the time that a state postconviction proceeding is pending. Because a petition for *certiorari* in the United States Supreme Court is not "an application for *State* post conviction . . . review" under § 2244(d)(2) (emphasis added), *see Duncan v. Walker*, 533 U.S. 167, 181-82 (2001), petitioner is not entitled to tolling under § 2244(d)(2) for the 90-day period in which he could have sought *certiorari* in the Supreme Court. *See Lawrence v. Florida*, 549 U.S. 327, 331-36 (2007).

that he had been pursing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005)); *see also, Holland*, 130 S. Ct. at 2562. "The petitioner bears the burden of establishing that he is entitled to equitable tolling." *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003). Importantly, diligence alone is not sufficient; petitioner must also show that some extraordinary circumstance prevented him from timely filing his petition. *See Mathis v. Thaler*, 616 F.3d 461, 474-76 (5th Cir. 2010) (petitioner not entitled to equitable tolling even though he had acted diligently). Further, neither a prisoner's *pro se* status nor his lack of knowledge of the law constitute extraordinary circumstances justifying equitable tolling. *See Lattimore v. DuBois*, 311 F.3d 46, 55 (1st Cir. 2002); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *Rodriguez v. Elo*, 195 F. Supp. 2d 934, 936 (E.D. Mich. 2002) (Rosen, J.).

Petitioner contends that he is entitled to equitable tolling based on the Sixth Circuit's decision in *Abela v. Martin*, 348 F.3d 164 (6th Cir. 2003) (en banc). In that case, the court held that a state postconviction proceeding remains "pending" for purposes of tolling the limitations period under § 2244(d)(2) during the time in which further appellate review, including a petition for certiorari in the United States Supreme Court, could have been sought, even if the petitioner did not seek such review. *See id.* at 172-73. Most of petitioner's argument is directed toward seeking equitable tolling based on his belief that the 90 days in which to seek *certiorari* following his *direct appeal* would be excluded from the limitations clock. However, that time period is, in fact, excluded from the limitations clock, which is why the limitations period in this case did not begin to run until September 25, 2007, 90 days after the Michigan Supreme Court denied his application for leave to

7

appeal.  Thus, this time has already been accounted for in determining the limitations issue.  To the extent petitioner contends he is entitled to equitable tolling for an additional 90 days because he thought, pursuant to *Abela*, that the 90-day *certiorari* period would also be tolled under § 2244(d)(2) with respect to his motion for relief from judgment, petitioner is not entitled to equitable tolling. In *Lawrence v. Florida*, 549 U.S. 327 (2007), the Supreme Court rejected the approach taken by the Sixth Circuit in *Abela*, holding that a petitioner is not entitled to tolling under § 2244(d)(2) for the 90-day period in which he could have sought *certiorari* in the Supreme Court because a petition for *certiorari* is not an "application for State postconviction review" under § 2244(d)(2).  *See Lawrence*, 549 U.S. at 331-36.  *Lawrence* was decided on February 20, 2007, before petitioner's direct review had expired and well before he had begun his postconviction proceedings.  Thus, petitioner could not have reasonably relied on *Abela* to believe that the limitations period was tolled for an additional 90 days following the Michigan Supreme Court's denial of leave to appeal with respect to the motion for relief from judgment.

A comparison with the court's decision in *Sherwood v. Prelesnik*, 579 F.3d 581 (6th Cir. 2009), is instructive.  In that case, the petitioner's direct appeal concluded in 2004.  On September 29, 2005, with only two days remaining in the limitations period, the petitioner filed a motion for relief from judgment in the trial court.  The Michigan Supreme Court denied the petitioner's application for leave to appeal with respect to the postconviction motion on January 29, 2007, and denied his motion for reconsideration on April 24, 2007.  The petitioner filed his habeas application six days later, on April 30.  *See Sherwood*, 579 F.3d at 583-84, 585.  The district court denied the petitioner's application as untimely in reliance on *Lawrence*, which had been decided between the time the Michigan Supreme Court denied the petitioner's application for leave to appeal on January

8

29, 2007, and the time that court denied reconsideration on April 24, 2007. *See id*. at 585. The

Sixth Circuit reversed, concluding that petitioner was entitled to equitable tolling for the 90 day

certiorari period established in *Abela*, notwithstanding the overruling of *Abela* by the Supreme Court

in *Lawrence*. The Court reasoned that

> Sherwood (through counsel) made a crucial decision when he opted to file his state
> post-conviction motion [with only two days remaining on the limitations clock],
> rather than file a petition for writ of habeas corpus in federal court. At the time that
> decision was made, *Abela* assured that Sherwood would have an additional ninety
> days after the Michigan Supreme Court's denial of an application for leave to appeal
> in which to file a petition for habeas corpus under § 2244(d)(2). Thus, although
> *Lawrence* was decided before Sherwood's motion for reconsideration was denied,
> Sherwood had already relied on *Abela*.

*Sherwood*, 579 F.3d at 588-89.

Here, in contrast, petitioner could not have reasonably relied on *Abela* in any way. *Lawrence*

was decided on February 20, 2007, while petitioner's *direct appeal* was still pending. Thus, even

before the limitations period began to run in petitioner's case, it was clear that he would not be

entitled under § 2244(d)(2) to tolling of the 90-day *certiorari* period following the state court

proceedings on any motion for relief from judgment. In other words, at no point relevant to the

limitations period did "*Abela* assure[] that [petitioner] would have an additional ninety days after

the Michigan Supreme Court's denial of an application for leave to appeal in which to file a petition

for habeas corpus under § 2244(d)(2)," nor had petitioner "already relied on *Abela*" before *Lawrence*

was decided. *Sherwood*, 579 F.3d at 588-89. Rather, "in this case, Petitioner had notice of the

*Lawrence* rule and time to comply with it, and simply failed to do so. This does not provide a basis

for equitable tolling." *Rea v. Curtin*, No. 1:08-CV-238, 2009 WL 528953, at *1 (W.D. Mich. Feb.

27, 2009).[5]  Accordingly, the Court should conclude that petitioner is not entitled to equitable tolling of the limitations period with respect to his habeas claims that were first raised on direct appeal.

### b.  Delayed Starting under § 2244(d)(1)(D)

Petitioner also argues that he is entitled to a delayed starting of the limitations period under § 2244(d)(1)(D) with respect to the habeas claims that were first raised in his motion for relief from judgment, because the factual predicate for these claims could not have been discovered before March 13, 2008.  As petitioner correctly notes, if he is granted a delayed commencement for these claims, they are timely.  If the limitations period did not commence until March 13, 2008, it ran for only 188 days before petitioner filed his motion for relief from judgment in the trial court.  The limitations period was then tolled under § 2244(d)(2) until the Michigan Supreme Court denied his application for leave to appeal on September 9, 2010.  An additional 89 days elapsed from that date until petitioner filed his habeas application.  Thus, if petitioner is entitled to delayed commencement under § 2244(d)(2), only 277 of the 365 days on the limitation clock elapsed by the time he filed his habeas application.

Nevertheless, the Court should conclude that petitioner's argument that he is entitled to a delayed commencement under § 2244(d)(1)(D) is without merit.  This provision requires a court to review the factual predicate of petitioner's claims and determine whether they could have been discovered prior to when his conviction became final.  It "does not postpone the accrual of limitations based on a *pro se* litigant's or an attorney's belated discovery or realization of the legal consequences of known facts.  Rather, postponed accrual is in order only if the facts themselves supporting a legal claim were undiscoverable in a timely fashion, despite due diligence." *Fraser*

---

[5]In light of petitioner's motion for access to case authorities, copies all unpublished decisions cited herein are appended to the end of this Report.

*v. United States*, 47 F. Supp. 2d 629, 630 (D. Md. 1999). In short, the operative inquiry is whether the facts themselves, rather than the legal import of or evidence supporting them, could not have been discovered through the exercise of reasonable diligence. *See United States v. Pollard*, 416 F.3d 48, 55 (D.C. Cir. 2005); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000); *Brooks v. McKee*, 307 F. Supp. 2d 902, 905-06 (E.D. Mich. 2004) (Gadola, J.); *Hereford v. McCaughtry*, 101 F. Supp. 2d 742, 745 (E.D. Wis. 2000). As the Fifth Circuit has explained, "[s]ection 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim." *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998); *accord Tate v. Pierson*, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001). Petitioner bears the burden of establishing his entitlement to delayed commencement under § 2244(d)(1)(D). *See Redmond v. Jackson*, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003) (Gadola, J.). To meet this burden, petitioner must "specify how the factual predicate of his claims could not have been discovered earlier" and "indicate what steps, if any, he took to discover these claims." *Grayson v. Grayson*, 185 F. Supp. 2d 747, 750 (E.D. Mich. 2002) (Roberts, J.).

In applying the delayed commencement provisions set forth in § 2244(d)(1)(B)-(D), a court must apply a claim-by-claim approach. *See Souliotes v. Evans*, 622 F.3d 1173, 1179-80 (9th Cir. 2010); *Fielder v. Varner*, 379 F.3d 113, 117-20 (3d Cir. 2004); *cf. Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005) (emphasis added) (explaining, in dicta, that § 2244(d)(1) "provides one means of calculating the limitation with regard to the "application" as a whole, § 2244(d)(1)(A) (date of final judgment), *but three others that require claim-by-claim consideration*, § 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C) (new right made retroactive); § 2244(d)(1)(D) (new factual predicate).)"); *Ege v. Yukins*, 485 F.3d 364, 373 (6th Cir. 2007) (explaining, in applying §

11

2244(d)(1)(D), that "[w]e must analyze Ege's two habeas claims separately with regard to . . . the section 2244(d)(1) bar."). Thus, the question here is whether petitioner is entitled to delayed commencement of the limitations period under § 2244(d)(1)(D) with respect to each claim asserted in the petition.

Petitioner's argument for delayed commencement under § 2244(d)(1)(D) is limited to the claims raised in his state court motion for relief from judgment. In that motion, petitioner raised three claims for relief. First, he argued that he was entitled to relief from judgment because the evidence was legally insufficient to support his conviction. Second, he contended that he was entitled to a new trial because newly discovered evidence showed that the Detroit Police Department crime lab may have mishandled evidence in his case, resulting in the destruction of potentially exculpatory evidence. Third, he contended that he was denied a fair trial by the trial court's failure to disclose a jury note requesting to have the definition of self-defense. The Court should conclude that none of these claims warrants a delayed commencement of the limitations period.

With respect to the sufficiency of the evidence claim, that claim was a repeat of the claim that petitioner had already raised on direct appeal. Further, because a sufficiency of the evidence claim is limited to a review of the evidence presented at trial, petitioner had all of the facts necessary to assert that claim at the time the trial concluded. Petitioner does contend, with respect to this claim, that newly discovered evidence in the form of two witness affidavits establish that the evidence was insufficient because they show that petitioner acted in self defense or, at most, committed manslaughter. Such newly discovered evidence, however, does not bear on petitioner's sufficiency of the evidence claim. As the Supreme Court has explained, "sufficiency of the evidence review . . . is limited to record evidence. . . . [It] does not extend to nonrecord evidence, including

newly discovered evidence." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Nor does the existence

of this newly discovered evidence provide an independent claim for habeas relief.  *See id*. at 400

("Claims of actual innocence based on newly discovered evidence have never been held to state a

ground for federal habeas relief absent an independent constitutional violation occurring in the

underlying state criminal proceeding."); *id.* at 404 (claim of actual innocence is "not itself a

constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his

otherwise [procedurally] barred constitutional claim considered on the merits.") (emphasis added).

In short, the "factual predicate" of petitioner's sufficiency of the evidence claim is the evidence

presented at trial, and this factual predicate was known to petitioner at the time the trial had

concluded.  Accordingly, petitioner is not entitled to a delayed commencement of the limitations

period under § 2244(d)(1)(D) with respect to his sufficiency of the evidence claim.

       With respect to his destruction of evidence claim, petitioner does not point to any newly

discovered evidence supporting this claim.  Petitioner contends only that the police failed to test a

gun found at the scene, which had a fingerprint on it, against the fingerprints of one of the victims,

and failed to test the gun for gunshot residue.  However, the fact that these tests had not been

performed was apparent at the time of trial.  Petitioner has pointed to no new evidence which

supports his claim that the police mishandled the evidence.  He does not allege that the police in fact

performed such tests and suppressed the exculpatory results of the tests.  Similar to his sufficiency

of the evidence claim, the "factual predicate" of this claim is the simple fact that the police had

failed to perform these tests, a fact that was readily apparent at the time of trial.  Thus, petitioner is

not entitled to a delayed commencement of the limitations period under § 2244(d)(1)(D) with respect

to this claim.

13

However, the Court should conclude that petitioner is entitled to a delayed commencement of the limitations period with respect to his claim regarding the jury note. Petitioner does allege that he did not discover the jury note until he received a copy of the trial court file on March 13, 2008, in response to his request to the trial court for the court file made pursuant to MICH. CT. R. 6.433. Further, there is nothing to indicate that petitioner could have discovered this note before he obtained a copy of his trial court file, as the note was not disclosed to the parties by the trial court. Petitioner sought access to his trial court file shortly after his direct appeals had concluded, and he had no basis for seeking the file prior to that time, when he was represented by counsel. In these circumstances, petitioner exercised due diligence in obtaining the jury note. *See Williams v. Knowles*, No. 1:03-CV-05819, 2006 WL 845734, at *8 (E.D. Cal. Mar. 30, 2006). And, as noted above, if petitioner is entitled to a starting date of March 13, 2008, his claim is timely. Accordingly, the Court should conclude that petitioner's jury note claim is not barred by the statute of limitations.

C.     *Merits of Petitioner's Timely Claim*

Nevertheless, the Court should conclude that petitioner's jury note claim is without merit, and should deny the claim on that basis.

1.     *Legal Standard*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

14

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by

the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

    2.    *Analysis*

Petitioner's conviction arises from a shooting which wounded two victims and killed a third. As summarized by the Michigan Court of Appeals:

> [D]efendant admits to shooting the decedent. While defendant claims that the shooting was in response to reasonable provocation and in self-defense, numerous witnesses testified that defendant shot the decedent in the back and buttocks after their argument had stopped and as the decedent was walking away. The autopsy

16

confirmed that the decedent was shot in his back and buttocks. One witness heard defendant say, "I told you that you needed to leave" as defendant fired. . . .

. . . .

In this case, viewing the evidence in a light most favorable to the prosecution, evidence was presented to show that defendant fired a gun at one victim as she walked away from the argument and from defendant. She was shot in the back. A witness heard defendant say, "I told you that you needed to leave" as defendant fired. Outside the house, defendant placed a gun to another victim's face and fired as defendant fled the scene. While defendant claims that he fired his gun only inside the house and in self-defense, the trail of blood found outside the house suggested that the victim was outside when he was shot.

*Payton*, 2006 WL 3755278, at *2. Petitioner contends that he was denied a fair trial by the trial court's failure to inform the parties of a jury note. The note simply inquires "[m]ay we have the definition of self-defense?" The Court should conclude that petitioner is not entitled to habeas relief on this claim.

While it is true that a trial court has "a duty to respond to the jury's request with sufficient specificity to clarify the jury's problem," *Davis v. Greer*, 675 F.2d 141, 145 (7th Cir. 1982) (citing *Bollenbach v. United States*, 326 U.S. 607, 612 (1946)), it is equally true that "[t]he choice was the jury's whether they should await an answer from the court or whether they could resolve the guilt or innocence of [petitioner] without an answer to their inquiry." *United States v. Spagnolo*, 546 F.2d 1117, 1119 (4th Cir. 1976); *see also*, *United States v. Young*, 140 F.3d 453, 456-57 & n.2 (2d Cir. 1998); *United States v. Rodriguez*, 765 F.2d 1546, 1554 (11th Cir. 1985). The jury began its deliberations at about 12:45 p.m. on June 30, 2005, and continued on that day through 4:00 p.m. During this time, the jury sent several notes which were responded to by the trial judge in open court, including a note requesting clarification of the distinction between second degree murder and voluntary manslaughter. *See* Trial Tr., dated 6/30/05, at 138-45. At no point during this time did any member of the jury request further clarification of the self-defense instruction, or suggest that

17

the court had not fully responded to its requests. The record is devoid of any evidence as to when this note was written by the jury, or even whether it was ever actually given to the trial judge prior to the verdict. Thus, there is no evidence that the trial judge unreasonably delayed in attempting to respond to the jury's inquiry and petitioner makes no argument that there was such an unreasonable delay. In the absence of such evidence, it cannot be said that the trial court's acceptance of the jury's verdict prior to it responding to the jury's request was contrary to, or an unreasonable application of, clearly established federal law. *See Crockett v. Hulick*, 542 F.3d 1183, 1189 (7th Cir. 2008); *Davis v. Booker*, 594 F. Supp. 2d 802, 828 (E.D. Mich.) (Tarnow, J.), *rev'd in part on other grounds*, 589 F.3d 302 (6th Cir. 2009).

Further, even if the trial court erred in failing to disclose this note and provide a response to the jury, such an error would entitle petitioner to relief only if he could demonstrate that he was prejudiced thereby. *See Rodriguez*, 765 F.2d at 1554. Petitioner cannot make this showing. The closing argument of petitioner's counsel was devoted in its entirety to arguing that petitioner acted in lawful self-defense. *See* Trial Tr., dated 6/30/05, at 96-106. The trial court gave a detailed instruction on self-defense, *see id*. at 132-35, and petitioner does not argue that this instruction was in any way erroneous or incomplete. In light of counsel's argument and the proper instruction given by the trial court, and the fact that the jury had sent a note requesting clarification of the distinction between second degree murder and voluntary manslaughter (suggesting they were focused on whether petitioner acted under adequate provocation, not in self-defense), petitioner has failed to demonstrate a reasonable likelihood that a simple re-reading of the self-defense instruction would have altered the jury's verdict. For these reasons, the Court should conclude that petitioner is not entitled to habeas relief on his jury note claim.

18

D.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

19

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

a. *Time-Barred Claims*

Where, as here, a petition is dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such a case, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485 (emphasis added).  As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted."  *Id*. at 486.

20

If the Court accepts the foregoing recommendation, petitioner cannot show that the Court's ruling on the procedural question is reasonably debatable. Petitioner does not dispute that his claims are untimely under § 2244(d)(1)(A). In light of the fact that *Lawrence* was decided well before petitioner's direct appeal had concluded, the conclusion that he has failed to show an extraordinary circumstance justifying equitable tolling is not reasonably debatable. Likewise, because the factual predicate of petitioner's sufficiency of the evidence and police misconduct claims was known at the time of trial, the conclusion that petitioner is not entitled to a delayed starting of the limitations period under § 2244(d)(1)(D) is not reasonably debatable. Thus, the resolution of the limitations issue is not reasonably debatable, and the Court should conclude that petitioner is not entitled to a certificate of appealability.

### b. Jury Note Claim

Likewise, the resolution of petitioner's jury note claim is not reasonably debatable, for the reasons discussed above. The record is devoid of any evidence suggesting that the trial court unreasonably delayed in failing to respond to the jury's note prior to accepting the jury's verdict. Further, in light of the fact that jury was focused on the distinction between second degree murder and manslaughter, and returned a verdict of guilty of second degree murder despite counsel's vigorous self-defense argument and the trial court's correct self-defense instruction, it is not reasonably debatable that petitioner has failed to demonstrate that he was prejudiced by the trial court's failure to respond to the jury note. Thus, the resolution of this claim is not reasonably debatable, and the Court should conclude that petitioner is not entitled to a certificate of appealability.

E.    *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's application for the writ of habeas corpus is barred by the statute of limitations governing habeas petitions, except for his claim relating to the jury note, which is timely pursuant to § 2244(d)(1)(D). Accordingly, the Court should deny petitioner's motion for equitable tolling and grant in part respondent's motion for summary judgment. With respect to petitioner's jury note claim, the Court should deny that claim on the merits. If the Court accepts this recommendation, the Court should also deny the certificate of appealability.

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 7/22/11

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on July 22,  2011.

s/Eddrey Butts
Case Manager

23

Westlaw.

Not Reported in F.Supp.2d, 2009 WL 528953 (W.D.Mich.)

(Cite as: 2009 WL 528953 (W.D.Mich.))

H

Only the Westlaw citation is currently available.
United States District Court,

W.D. Michigan,
Southern Division.
Valdez S. REA, Petitioner,
v.
Cindi CURTIN, Respondent.
No. 1:08-CV-238.

Feb. 27, 2009.
West KeySummary**Habeas Corpus 197**
⚖══603.5

197 Habeas Corpus

    197III Jurisdiction, Proceedings, and Relief
        197III(A) In General
            197k603 Limitations, Laches or Delay
                197k603.5 k. Accrual. Most Cited Cases
    (Formerly 197k603)

    Where a habeas petitioner had not sought to appeal a decision of the Michigan Court of Appeals in the Michigan Supreme Court, the statute of limitations on his subsequent habeas petition began to run when the 56-day period for seeking review in the Michigan Supreme Court expired. Because he did not appeal to the Michigan Supreme Court, the limitations period did not begin to run at the expiration of the 90-day period during which he could have filed a petition for certiorari to the United States Supreme Court. 28 U.S.C.A. § 2244(d)(1).

Valdez S. Rea, Kincheloe, MI, pro se.

*ORDER AND JUDGMENT APPROVING REPORT AND RECOMMENDATION*

ROBERT J. JONKER, District Judge.

    *1 This matter is before the Court on the Magistrate Judge's Report and Recommendation (docket # 6) recommending dismissal of Petitioner's habeas petition as time barred. Petitioner filed objections (docket # 7). When a party objects to portions of a Report and Recommendation, "[t]he district judge ... has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed.1997). Specifically, the Rules provide that:

    The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

    FED. R. CIV. P. 72(b)(3); *See also* 28 U.S.C. § 636(b)(1) (C) (Lexis through P.L. 110-180). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co., 656 F.2d 1208, 1215 (6th Cir.1981).* After de novo review in this case, the Court finds Magistrate Judge Brenneman's Report and Recommendation to be both factually sound and legally correct.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 25

Not Reported in F.Supp.2d, 2009 WL 528953 (W.D.Mich.)

(Cite as: 2009 WL 528953 (W.D.Mich.))

The Report and Recommendation recommends that Petitioner's habeas corpus petition be denied because it is time barred. Plaintiff objects that his petition should be treated as timely because it would be timely if the United States Supreme Court had not issued its decision in *Lawrence v. Florida,* 549 U.S. 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007). Among other things, *Lawrence* held that tolling under § 2244(d) (2) did not apply to the prospect or pendency of a petition for *certiorari* to the United States Supreme Court from a final decision of the State's highest court. Petitioner correctly points out that this decision effectively overruled the decision of the Sixth Circuit in *Abela v. Martin,* 348 F.3d 164 (2003), but this does not save Petitioner's claim. The Supreme Court decided *Lawrence* on February 20, 2007, over a year before Petitioner filed this action, and while Petitioner was still pursuing post-conviction relief in the state courts. The Michigan Supreme Court denied Petitioner's application on December 28, 2007, ten months after the *Lawrence* decision. At the time, even under *Lawrence,* Petitioner still had 37 days left to file a timely habeas application in federal court. He failed to do so.

Petitioner does not expressly raise the issue of **equitable tolling**. If he had, it would not be warranted on the facts of this case. To demonstrate a basis for **equitable tolling**, Petitioner would have to demonstrate that he was diligently pursuing his right to file a petition for a writ of habeas corpus, and that some extraordinary circumstance stood in his way of doing so in a timely way. *See, Lawrence,* 127 S.Ct. at 1085 ("To be entitled to **equitable tolling**, [a petitioner] must show '(1) that he has

been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."). Nothing in the record of this case suggests a basis for believing Petitioner could meet this burden, even if he actually asserted it. This is not a case, like *Henderson v. Luoma,* 2008 WL 5046414 (6th Cir. Nov.26, 2008), in which the Petitioner filed a timely petition under *Abela* before the Supreme Court rule in *Lawrence*. Rather, in this case, Petitioner had notice of the *Lawrence* rule and time to comply with it, and simply failed to do so. This does not provide a basis for **equitable tolling**. *Cf. Sudberry v. Warden,* 2009 WL 275418 (S.D.Ohio Feb.4, 2009) (holding that *Abela* does not warrant **equitable tolling** for a habeas petition that was time barred under both pre-*Abela* Sixth Circuit precedent effective at the time of initial filing, and under the *Lawrence* rule because Petitioner could not reasonably have relied on *Abela* to his detriment).

### *Certificate of Appealability*

**\*2** Before Petitioner may appeal the Court's dismissal of his petition, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(A) (Lexis through P.L. 110-180); FED. R.APP. P. 22(b)(1). Thus the Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); FED. R.APP. P. 22(b)(1); In re Certificates of Appealability, 106 F.3d 1306, 1307 (6th Cir.1997).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 528953 (W.D.Mich.)

(Cite as: 2009 WL 528953 (W.D.Mich.))

28 U.S.C. § 2253(c)(2). To make this showing, the petitioner must demonstrate that reasonable jurists could "debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 894, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)).

When a district court rejects a habeas petition on the merits, the required "substantial showing" is "straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack,* 529 U.S. at 484. But when a district court denies a habeas claim on procedural grounds without addressing the claim's merits, the petitioner must demonstrate both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack,* 529 U.S. at 484 (emphasis added). If the district court invokes a plain procedural bar to dispose of the case, "a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.*

The Court is denying Petitioner's petition on the plain procedural ground of statute of limitations without addressing the claim's merits. The Court is invoking a plain procedural bar to dispose of the case, and Petitioner cannot make the required substantial showing because "a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (docket # 6) is approved and adopted as the opinion of the Court.

**IT IS FURTHER ORDERED** that:

1. Petitioner's petition for a writ of habeas corpus is denied because it is barred by the one-year statute of limitations; and

2. A certificate of appealability is denied.

### *REPORT AND RECOMMENDATION*

HUGH W. BRENNEMAN, JR., United States Magistrate Judge.

**\*3** This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini,* 26 Ohio Misc. 149, 424 F.2d 134, 141 (6th Cir.1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 27

Not Reported in F.Supp.2d, 2009 WL 528953 (W.D.Mich.)

(Cite as: 2009 WL 528953 (W.D.Mich.))

well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke,* 178 F.3d 434, 436-37 (6th Cir.1999). The Court may *sua sponte* dismiss a habeas action as time-barred under 28 U.S.C. § 2244(d). *Day v. McDonough,* 547 U.S. 198, 209, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006). After undertaking the review required by Rule 4, I conclude that the petition is barred by the one-year statute of limitations.

### *Discussion*

I. *Factual Allegations*

Petitioner is incarcerated in the Chippewa Correctional Facility. He pleaded guilty in the Saginaw County Circuit Court to second-degree murder. On September 24, 2003, the trial court sentenced Petitioner to imprisonment of twenty to fifty years. The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal on April 18, 2005. Petitioner did not seek leave to appeal in the Michigan Supreme Court.

On May 8, 2006, Petitioner filed a motion for relief from judgment in the Saginaw County Circuit Court. The trial court denied his motion on June 26, 2006. The Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner's applications for leave to appeal on July 10, 2007 and December 28, 2007, respectively.

Petitioner now raises two grounds for habeas corpus relief. First, Petitioner claims that he is entitled to re-sentencing where the trial court sentenced him based up inaccurate information. Second, he argues that the trial court committed reversible error by scoring the sentencing guidelines based upon facts that were not admitted by Petitioner or proven beyond a

reasonable doubt.

II. *Statute of Limitations*

Petitioner's application is barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, PUB.L. NO. 104-132, 110 STAT. 1214 (AEDPA). Prior to enactment of the AEDPA, there was no defined period of limitation for habeas actions.[FN1] Section 2244(d)(1) provides:

> FN1. Previously, the only time limit was provided in Rule 9 of the Rules Governing § 2254 Cases, which allows dismissal of a petition only under circumstances where the state has been prejudiced by the delay in filing.

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of

**\*4** (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 528953 (W.D.Mich.)

(Cite as: 2009 WL 528953 (W.D.Mich.))

Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured. *See Dodd v. United States,* 545 U.S. 353, 357, 125 S.Ct. 2478, 162 L.Ed.2d 343 (2005). Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The Michigan Court of Appeals denied Petitioner's application for leave to appeal on April 18, 2005. Petitioner did not seek leave to appeal in the Michigan Supreme Court. Where a petitioner has failed to pursue an avenue of appellate review available to him, the time for seeking review at that level is counted under § 2244(d)(1)(A). *See* 28 U.S.C. § 2244(d)(1) (A) (time for filing a petition pursuant to § 2254 runs from "the date on which the judgment became final by the conclusion of direct review *or the expiration of time for seeking such review."* ) (Emphasis added). However, such a petitioner is not entitled to also count the 90-day period during which he could have filed a petition for certiorari to the United States Supreme Court. *See United States v. Cottage* 307 F.3d 494, 499 (6th Cir.2002) (holding that, in the context of a motion under

28 U.S.C. § 2255, where a petitioner has failed to file a direct appeal to the court of appeals, the time for filing a petition does not include the ninety-day period for seeking certiorari in the United States Supreme Court because no judgment exists from which he could seek further review in the United States Supreme Court); *United States v. Clay,* 537 U.S. 522, 530-31, 123 S.Ct. 1072, 155 L.Ed.2d 88(2003) (holding that finality is analyzed the same under §§ 2244(d)(1)(A) and 2255). Here, since the United States Supreme Court will review only final judgments of the "highest court of a state in which a decision could be had ...," 28 U.S.C. § 1257(a), the decision must be considered final at the expiration of the 56-day period for seeking review in the Michigan Supreme Court. *Roberts v. Cockrell,* 319 F.3d 690, 694-95 (5th Cir.2003); *Kapral,* 166 F.3d at 577; *Ovalle v. United States,* No. 02-1270, 2002 WL 31379876, at *2 (6th Cir. Oct.21, 2002) (citing *Wims v. United States,* 225 F.3d 186, 188 (2d Cir.2000)). Petitioner's conviction therefore became final on June 14, 2005. Without the benefit of tolling, Petitioner had one year, until June 14, 2006, to file his habeas application.

**\*5** The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker,* 533 U.S. 167, 181-82, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett,* 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000) (defining "properly filed"). The statute of limitations was tolled on May 8, 2006, when Petitioner filed his motion for relief from

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 528953 (W.D.Mich.)

(Cite as: 2009 WL 528953 (W.D.Mich.))

judgment. At that time, Petitioner had thirty-seven days remaining in the limitations period. The statute remained tolled until the Michigan Supreme Court denied Petitioner's application for leave to appeal on December 28, 2007. *See Lawrence v. Florida,* 549 U.S. 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007). Thereafter, Petitioner had thirty-seven days, until February 4, 2008, in which to file his habeas petition. Petitioner filed the instant petition on March 9, 2008, more than a month after the statute of limitations expired.[FN2]

> **FN2.** Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir.2002); *In re Sims,* 111 F.3d 45, 47 (6th Cir.1997). According to the petition, Petitioner handed his habeas action to prison officials for mailing on March 9, 2008. His petition was received by the Court on March 11. For purposes of this opinion, the Court has given Petitioner the benefit of the earliest possible filing date.

The one-year limitations period applicable to § 2254 is a statute of limitations subject to equitable tolling. *Dunlap v. United States,* 250 F.3d 1001, 1007 (6th Cir.2001). A petitioner bears the burden of showing that he is entitled to equitable tolling. *See Allen v. Yukins,* 366 F.3d 396, 401 (6th Cir.2004); *Jurado v. Burt,* 337 F.3d 638, 642 (6th Cir.2003); *Grifin v. Rogers,* 308 F.3d 647, 653 (6th Cir.2002). The Sixth Circuit repeatedly has cautioned that equitable tolling should be applied "sparingly" by this Court. *See Solomon v. United States,* 467 F.3d 928, 933 (6th Cir.2006); *Jurado,* 337 F.3d at

642; *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir.2002); *Dunlap,* 250 F.3d at 1008-009. A petitioner seeking equitable tolling of the habeas statute of limitations has the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Lawrence,* 127 S.Ct. at 1085 (citing *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)).

Petitioner has failed to raise equitable tolling or allege any facts or circumstances that would warrant its application in this case. The fact that Petitioner is untrained in the law, was proceeding without a lawyer, or may have been unaware of the statute of limitations for a certain period does not warrant tolling. *See Allen,* 366 F.3d at 403-04; *Brown v. United States,* 20 F. App'x 373, 375 (6th Cir.2001) (citing *United States v. Baker,* 197 F.3d 211, 218-19 (6th Cir.1999)); *Fisher v. Johnson,* 174 F.3d 710, 714 (5th Cir.1999) ("ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse [late] filing."). Accordingly, Petitioner is not entitled to equitable tolling of the statute of limitations.

The Supreme Court has directed the District Court to give fair notice and an adequate opportunity to be heard before dismissal of a petition on statute of limitations grounds. *See Day,* 547 U.S. at 210. This report and recommendation shall therefore serve as notice that the District Court may dismiss Petitioner's application for habeas corpus relief as time-barred. The opportunity to file objections to this report and recommendation constitutes Petitioner's opportunity to be heard by the District Judge.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Not Reported in F.Supp.2d, 2006 WL 845734 (E.D.Cal.)

(Cite as: 2006 WL 845734 (E.D.Cal.))

### Recommended Disposition

**\*6** For the foregoing reasons, I recommend that the habeas corpus petition be denied because it is barred by the one-year statute of limitations. I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel,* 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).
W.D.Mich.,2009.

Rea v. Curtin
Not Reported in F.Supp.2d, 2009 WL 528953 (W.D.Mich.)
END OF DOCUMENT

**H**

Only the Westlaw citation is currently available.
United States District Court,

E.D. California.
Tommy Ray WILLIAMS, Petitioner,
v.
Mike KNOWLES, Warden, Respondent.
No. 1:03-CV-05819-TAG HC.

March 30, 2006.
Carolyn Phillips, Attorney at Law, Fresno, CA, David M. Porter, Office of the Federal Defender, Sacramento, CA, for Petitioner.

Justain Paul Riley, Brian Roy Means, Mary Jo Graves, Attorney General's Office for the State of California, Sacramento, CA, for Respondent.

ORDER DENYING RESPONDENT'S RENEWED MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS AS UNTIMELY

GOLDNER, Magistrate J.
(Doc. 28)
ORDER REQUIRING RESPONDENT TO FILE AN ANSWER
ORDER SETTING BRIEFING SCHEDULE
**\*1** Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to Title 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.
PROCEDURAL HISTORY

Petitioner is confined pursuant to the judgment of the Superior Court of the State of California, County of Tuolumne, imposed on October 23, 1998. (Doc. 8, Exh. A). Petitioner was convicted of second degree murder (Cal. Pen.Code § 187(a)), and driving under the influence

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 845734 (E.D.Cal.)

(Cite as: 2006 WL 845734 (E.D.Cal.))

causing injury (Cal. Veh.Code § 23153(a)). (*Id.*). The Court imposed an indeterminate 15-year-to-life sentence for the second degree murder conviction plus a determinate three-year concurrent term for driving under the influence causing injury. (*Id.*).

The parties dispute whether Petitioner timely appealed his conviction. On December 17, 1998, Petitioner signed two requests to withdraw his guilty plea, one for the Court of Appeal, Fifth Appellate District ("5th DCA") and one for the Tuolumne County Superior Court. (Doc. 38, Exh. B). Prison mail records logged these two documents on December 23, 1998. (Doc. 38, Exh. C). It is undisputed that the Superior Court received the document on December 28, 1998, and lodged it but did not file it. (Doc. 38, Exh. D). Although the Superior Court apparently construed the document as a notice of appeal, it notified Petitioner that his filing was deemed late since it was received beyond the 60-day period for filing a notice of appeal. (*Id.*). On March 24, 1999, the 5th DCA issued an order denying the motion for acceptance of appeal, indicating that the appeal had been received beyond the 60-day period and that Petitioner had waived his right to appeal because of his change of plea. (Doc. 38, Exh. E).

On May 9, 2002, Petitioner filed a petition for writ of habeas corpus with the Tuolumne County Superior Court. (Doc. 8, Exh. B). This petition appears to raise three grounds for relief: (1) ineffective assistance of trial counsel in that counsel, because of fear for her own safety and intimidation resulting from the local publicity, pressured Petitioner to accept a guilty plea rather than go to trial; (2) newly discovered evidence, i.e., an autopsy report of the victim indicating that peritonitis from an improperly placed feeding tube, not blunt head trauma resulting from the collision with Petitioner's vehicle, caused the victim's death; (3) failure of the trial court to sua sponte inquire into the effectiveness of counsel once the court was advised of threats against counsel and Petitioner; and (4) error in imposing a restitution fine without conducting a hearing on Petitioner's ability to pay. (Doc. 8, Exh. B). The Superior Court habeas petition was denied on September 9, 2002. (*Id.*, Exh. C).

On October 3, 2002, Petitioner filed a habeas petition in the 5th DCA, raising the same issues as the previous petition. (Doc. 8, Exh. D). This second petition was denied

on November 14, 2002. (*Id.*, Exh. E). On December 10, 2002, Petitioner filed a third petition for writ of habeas corpus with the California Supreme Court, raising the same issues as in the previous two petitions. (*Id.*, Exh. F). This last petition was denied on April 30, 2003. (*Id.*, Exh. G).

**\*2** Petitioner filed his initial federal petition on June 16, 2003, in the U.S. District Court for the Eastern District of California. (Doc. 1). Appended to the petition are the same legal briefs and arguments Petitioner raised in each of his three state court habeas petitions. (*Id.*). On June 30, 2003, this Court issued an Order directing Respondent to file an answer, or, in the alternative, a motion to dismiss the petition. (Doc. 5). On September 2, 2003, Respondent submitted a motion to dismiss the petition on the grounds it was submitted beyond the one-year statute of limitations. (Doc. 8). Petitioner opposed the motion on September 22, 2003. (Doc. 9). Both parties have consented to the jurisdiction of the United States Magistrate Judge. (Docs.3, 7).

On December 3, 2003, the Court issued an order granting Respondent's motion to dismiss, dismissing the petition, and entering judgment in favor of Respondent. (Docs.11, 12). Petitioner filed a notice of appeal on December 29, 2003. (Doc. 13). On October 26, 2004, at the conclusion of the appeal process, the Court of Appeals for the Ninth Circuit issued an order vacating the judgment of this Court and remanding the case "for further factual development, and if determined appropriate by the district court, an evidentiary hearing, to determine (1) whether petitioner satisfied the actual innocence test set forth in *Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); (2) whether the statute of limitations began to run on August 30, 2001, the date petitioner discovered the factual predicate for his claims; and (3) whether the statute of limitations should be equitably tolled until August 30, 2001." (Doc. 23).

On April 18, 2005, Respondent filed a renewed Motion to Dismiss, again based on a violation of the one-year statute of limitations. (Doc. 28). In this Motion, Respondent addresses only "actual innocence" under *Schlup,* and tolling for newly discovered evidence under sec. 2244(d)(1)(d); Respondent does not address the issue of equitable tolling. (Doc. 28, pp. 5-9). On September 27,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 845734 (E.D.Cal.)

(Cite as: 2006 WL 845734 (E.D.Cal.))

2005, Petitioner's counsel filed an Opposition to Respondent's Motion, supported, inter alia, by a Declaration from Petitioner, prison mail logs, and the case log of trial counsel. (Doc. 37). Respondent filed no Reply.

DISCUSSION

*A. Procedural Grounds for Motion to Dismiss*

On April 18, 2005, Respondent has filed a Motion to Dismiss the petition as being filed outside the one-year limitations period prescribed by Title 28 U.S.C. § 2244(d)(1). (Doc. 28.) Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court...." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed Respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. *See, e.g., O'Bremski v. Maass,* 915 F.2d 418, 420 (9th Cir.1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); *White v. Lewis,* 874 F.2d 599, 602-03 (9th Cir.1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); *Hillery v. Pulley,* 533 F.Supp. 1189, 1194 & n. 12 (E.D.Cal.1982) (same). Thus, a respondent can file a motion to dismiss after the court orders a response, and the court should use Rule 4 standards to review the motion. *See Hillery,* 533 F.Supp. at 1194 & n. 12.

**\*3** In this case, Respondent's Motion to Dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s one-year limitation period. Because Respondent's Motion to Dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal answer, the Court will review Respondent's Motion to Dismiss pursuant to its authority under Rule 4.

*B. Limitation Period for Filing a Petition for Writ of Habeas Corpus*

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997); *Jeffries v. Wood,* 114 F.3d 1484, 1499 (9th Cir.1997) (en banc), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997). The original petition in this case was filed on June 16, 2003 (Doc. 1), and thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, section 2244, subdivision (d) reads:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In this case, Petitioner was convicted on October 1,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 845734 (E.D.Cal.)

(Cite as: 2006 WL 845734 (E.D.Cal.))

1998 and sentenced on October 23, 1998. (Doc. 8, Exh. A). Respondent asserts that Petitioner filed no valid direct appeal from his conviction, and therefore the one-year statute commenced to run 60 days later, i.e., on December 22, 1998. (Doc. 8, p. 2). In the Ninth Circuit, Petitioner conceded that he had not filed an appeal. (Doc. 28, LD 1, p. 3). Petitioner now contends, however, that the document entitled "Notice of Withdraw Pre-Plea Bargain," signed by Petitioner on December 17, 1998, and sent to both the Tuolumne County Superior Court and the 5th DCA, constituted an appeal. (Doc. 38, Exh. B). Moreover, Petitioner argues that the "mailbox rule" of deeming a petition filed on the date it is delivered from the inmate to prison authorities governs the filing of his direct appeal in state court as well and makes his "appeal" timely. (Doc. 37, p. 3, fn.2). As mentioned, the Superior Court received and lodged the Notice on December 28, 1998, but considered it untimely. (Doc. 38, Exh. D). On March 24, 1999, the 5th DCA issued an order refusing to accept Petitioner's Notice as a timely appeal. (Doc. 38, Exh. D). Petitioner now maintains that the one-year period commenced 60 days after this last order, or on May 23, 1999, rather than on December 22, 1998. (Doc. 37, p. 3).

**\*4** In *In re Jordan*, 4 Cal.4th 116, 13 Cal.Rptr.2d 878, 840 P.2d 983 (1992), the California Supreme Court affirmed the "prison delivery" rule, whereby an inmate's notice of appeal is deemed timely if delivered to prison authorities before the expiration of the 60-day period provided for in California Rule of Court, Rule 31(a). *Jordan*, 4 Cal.4th at 129, 13 Cal.Rptr.2d 878, 840 P.2d 983. Citing *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), which sets forth the federal "mailbox" rule for habeas petitions, the California Supreme Court rejected the contention that amendments to Rule 31(a) extending the period of filing the notice of appeal from 10 to 60 days had abrogating earlier case law articulating the "prison delivery" rule. *Id.* Thus, under California law, a notice of appeal is timely if delivered to prison authorities within the 60-day period for filing such notices, even if the notice itself is not filed with the appropriate court until after the expiration of the 60-day period. *Id.* at 130.

Petitioner contends that he signed both documents on December 17, 1998, and also that he delivered them that same date to prison authorities, which would, under the

*Jordan* rule, make Petitioner's filing timely. (Doc. 38, p. 2). However, Petitioner also has supplied the prison mail record that logged in these two documents on December 23, 1998. (*Id.*). This would be one day *beyond* the expiration of the 60-day period provided for in Rule 31(a). The prison log does not indicate when the documents were actually received from Petitioner. Thus the Court is faced with a discrepancy between Petitioner's assertion in his declaration, and the accompanying prison mail log supplied by Petitioner. Petitioner does not challenge the mail log's entry of January 11, 1999, as being accurate and as correctly reflecting the date he received the order from the 5th DCA rejecting his appeal, nor did he raise this issue at any time prior to his opposition to this renewed motion to dismiss. Indeed, as mentioned, in his Ninth Circuit brief he conceded that he had not filed an appeal.

Based upon the evidence in the prison mail log and Petitioner's failure to raise this issue at any earlier time, the Court finds that the purported notice of appeal was delivered to prison officials on December 23, 1998, one day *after* the expiration of the 60-day period for filing a notice of appeal. Hence, the notice of appeal was not timely. *In re Chavez*, 30 Cal.4th 643 659, 134 Cal.Rptr.2d 54, 68 P.3d 347 (2003)(applying "prison delivery" rule but concluding that the inmate's notice of appeal was delivered to prison officials after the 60-day period had expired).

Accordingly, Petitioner's one-year AEDPA period commenced on December 22, 1998 and would have expired on December 22, 1999, absent applicable statutory or equitable tolling. Since it is undisputed that Petitioner did not file his federal petition until June 16, 2003, the petition is untimely unless statutory or equitable tolling makes it timely. *See Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir.2001). In order to answer this last question, the Court will address each of the three bases on which **Petitioner** asserts that the instant petition is timely.

*C. Tolling Pursuant to 28 U.S.C. § 2244( d)( 1)( D)*

**\*5 Petitioner** first asserts that the one-year period did not commence to run until he received the autopsy report, which was sent by the Public Defender's office on August 30, 2001, and received by **Petitioner** on September 5, 2001. (Doc. 37, pp. 7-13). He therefore claims he is

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

2:10-cv-15011-GER-PJK  Doc # 16  Filed 07/22/11  Pg 34 of 40  Pg ID 1381

Not Reported in F.Supp.2d, 2006 WL 845734 (E.D.Cal.)

(Cite as: 2006 WL 845734 (E.D.Cal.))

entitled to tolling under section 2244( d)( 1)( D) because he did not discover the autopsy report's finding until that date.

Respondent does not challenge the fact that **Petitioner** received his **trial court file** at that time; rather, Respondent maintains that **Petitioner** already knew of the contents of the autopsy report because his trial attorney had explained this to him before he entered his plea. In support of this point, Respondent relies on the declaration of Karen Block-Davis, **Petitioner's** trial counsel, which sets forth her recollection of reading the autopsy report, then meeting with **Petitioner**, and "sharing" the contents of that report with him. (Doc. 28, Exh. 1). Respondent also relies upon an excerpt from the sentencing hearing at which Block-Davis noted to the court that the victim's death was a tragedy "magnified by the fact that he probably didn't have to die, but for complications at the hospital...." (Doc. 29, LD 3, p. 12). Thus, Respondent contends that Petitioner cannot claim relief under section 2244(d)(1)(D) because the information in the autopsy report is not "newly discovered." (Doc. 28, pp. 5-6).

In opposition, Petitioner submits his own declaration in which he declares that at "no time prior to my plea or before I received my file from the public defender's office on September 4, 2001 did Ms. Davis tell me that the victim Mr. Aubrey had died as a result of the hospital's negligence and not as a result of the accident." (Doc. 38, p. 1). Petitioner insists that Davis told him that the victim had died "from complications," a term he assumed meant "complications from the accident, not that the hospital had done something wrong which caused his death." (*Id.* at p. 2). Petitioner indicates that Davis did not show him the autopsy report, and that most of their conversation prior to entering a change of plea revolved around the security threats to Davis and Petitioner and how a 15-year sentence was a "good deal considering the circumstances." *Id.*

28 U.S.C. section 2244(d)(1) provides as follows:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of ...

(D) the date on which the factual predicate of the claim or claims presented could have been discovered

through the exercise of **due diligence**.

Thus, under section 2244( d)( 1)( D), the one-year limitation period starts on the date when "the factual predicate of the claim or claims presented could have been discovered through the exercise of **due diligence**." *Hasan v. Galaza,* 254 F.3d 1150, 1154, fn. 3 (9th Cir.2001)(*quoting Owens v. Boyd,* 235 F.3d 356, 359 (7th Cir.2000). **Due diligence** does not **require** "the maximum feasible **diligence**," but it does **require** reasonable **diligence** in the circumstances. *Schlueter v. Varner,* 384 F.3d 69, 74 (3d Cir.2004)(*quoting Moore v. Knight,* 368 F.3d 936, 940 (7th Cir.2004); *see Wims v. United States,* 225 F.3d 186, 190, fn. 4 (2d Cir.2000). It is not necessary for a petitioner to understand the legal significance of the facts; rather, the clock starts when a petitioner understands the facts themselves. *Hasan,* 254 F.3d at 1154 fn. 3; Owens, 235 F.3d at 359 ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognized their legal significance.") To "have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting both unreasonable performance and resulting prejudice." *Hasan,* 254 F.3d at 1154. In order to claim the benefit of tolling in this case, it is Petitioner's burden to establish it. *Smith v. Duncan,* 297 F.3d 809, 814 (9th Cir.2002); *Tholmer v. Harrison,* 2005 WL 3144089 (E.D.Cal. Nov.22, 2005), *1; *see Hinton v. Pac. Enters.,* 5 F.3d 391, 395 (9th Cir.1993)(party seeking tolling bears the burden of alleging facts which would give rise to tolling).

**\*6** Here, Petitioner's habeas claims of ineffective assistance of counsel, failure by the state court to investigate counsel's performance, and actual innocence, all derive from the information contained in the autopsy report, which states in clear terms that peritonitis, not blunt force head trauma, caused the victim's death. As both Petitioner and Respondent note, in California, "inadequate" medical treatment is not a defense to homicide but "grossly improper" medical treatment is a defense. (Doc. 28, p. 8; Doc. 37, p. 5). Moreover, Petitioner points out that when the original injury is not the cause of death, a defendant is not guilty of an unlawful homicide. (Doc. 37, p. 6).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

5

Not Reported in F.Supp.2d, 2006 WL 845734 (E.D.Cal.)

(Cite as: 2006 WL 845734 (E.D.Cal.))

Here, the autopsy report states both that the cause of death *was* peritonitis and that the head trauma resulting from Petitioner's conduct *was not* sufficient to cause death. (Doc. 1, Exh. 4). Thus, the information contained in this autopsy report would indicate that a conviction for second degree murder in California could not be sustained. That trial counsel recommended that Petitioner plead guilty to a second-degree murder conviction that could not be sustained suggests that Petitioner's counsel was ineffective, perhaps due to a constellation of circumstances, including a popular victim; a relatively small community; a high-profile case; Petitioner's high blood-alcohol content at the time of the accident; his prior history of drunk driving; and the death threats made to Davis and Petitioner, which together may have created an atmosphere of intimidation in which Davis failed to represent her unpopular client with the requisite zeal expected when the victim's autopsy report precludes a factual basis for the plea ultimately negotiated.

It is clear from the foregoing, that the autopsy report was the "factual predicate" for three of the petition's claims.[FN1] Thus, the Court must now look to whether the factual predicate of these claims "could have been discovered through the exercise of **due diligence**." *Hasan, 254 F.3d at 1154*. This in turn involves an inquiry into whether (1) **Petitioner** knew of the contents of the autopsy report at a date prior to September 5, 2001, and (2) if not, whether **Petitioner** exercised **due diligence** in **obtaining** the factual predicate. *Id.*

FN1. **Petitioner's** fourth claim, i.e., that the state court failed to conduct an "ability to pay" hearing before imposing a state restitution fine, would not appear to be derived from the information contained in the case **file** received by **Petitioner** on September 5, 2001, nor does it appear even to raise a federal question entitling **Petitioner** to habeas relief. *E.g., Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)*("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). Because the parties have chosen to address the possible exceptions to the AEDPA's one-year limitation period as applied to all of Petitioner's claims, and have not distinguished among them,

the Court will defer addressing potential pleading defects in the fourth claim in this Order.

*1. Petitioner's Knowledge of the Autopsy Report*

On the surface, the record now before the Court would appear to have a factual dispute: Respondent claims, through Davis's declaration, that trial counsel discussed the *contents* of the autopsy report with Petitioner at the time of his plea. Petitioner maintains that Davis discussed the autopsy report with him only by saying that it showed the victim died of "complications." Respondent argues that Davis's recollection is, in essence, determinative of this issue, while Petitioner contends that Davis's declaration is entirely consistent with Petitioner's version of events. The Court finds Petitioner's argument persuasive.[FN2]

FN2. In resolving this apparent factual dispute in the record, the Court applies the "preponderance of the evidence" standard. *Vineyard v. Dretke, --- F.3d ----, 2005 WL 2219272 (N.D.Texas Aug.5, 2005)*(petitioner has burden of establishing equitable tolling by a preponderance of the evidence); *U.S. v. Marshall, 856 F.2d 896* (7th Cir.1988)(party seeking tolling must establish entitlement to it by a preponderance of the evidence). Although section 2244(d)(1)(D) is a different basis for relief from the AEDPA's one-year limitation period than equitable tolling, there is no obvious reason why the "preponderance" standard would not apply in this context as well. In applying this evidentiary standard, the Court is mindful of 28 U.S.C. sec. 2254(e)(1), which imposes a "clear and convincing" standard on petitioners seeking to rebut the presumption of correctness afforded a state court factual determination. Here, however, the factual findings before this Court are different from those that were before the state courts. In denying Petitioner's initial state habeas petition, the Tuolumne County Superior Court ruled that Petitioner had failed to raise his claims in a timely fashion and did not show that his delay was justified by "recent discovery of a new legal or factual basis" for his claims. (Doc. 28, Exh. C). The state court, however, was addressing state court questions regarding

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 845734 (E.D.Cal.)

(Cite as: 2006 WL 845734 (E.D.Cal.))

timeliness and sufficiency to grant a state habeas petition. Here, by contrast, the Court is construing and applying federal law. "[T]he application of equitable tolling is a question of federal law. Our present discussion impacts only [Petitioner's] filing for federal habeas relief, not the timeliness of his petition for state postconviction relief." *Kennan v. Bagley, 400 F.3d 417, 420-421* (6th Cir.2005). Moreover, the evidentiary record now before this Court is distinctly different from that which was before the state courts on collateral review, thus making any effort at giving "deference" to state court findings meaningless. Accordingly, the Court concludes that the appropriate evidentiary standard here is a "preponderance of the evidence," not "clear and convincing evidence."

**\*7** First, nowhere in Davis's declaration does she expressly state that she discussed the autopsy's conclusions with Petitioner. Nor does Davis indicate that she showed Petitioner the report itself or that she read its contents to him. Instead, her declaration is ambiguous. Davis declares that she "shared" the contents with Petitioner, without explaining what that term meant in terms of the specific factual allegations at issue in this case. The term "shared" could be interpreted, on the one hand, as showing the actual contents of the report to Petitioner; on the other hand, it could suggest that Davis merely paraphrased or summarized the contents for Petitioner, e.g., telling him that the victim died of "complications." The latter, of course, is Petitioner's recollection of events.

This ambiguity is particularly telling because the Ninth Circuit remanded this case expressly to develop the facts relating to whether Petitioner is entitled to some form of relief from the procedural timeliness bar. Both parties were acutely aware of this. Respondent had the opportunity to elicit a declaration from Davis that would have removed any ambiguity about what and how Davis "shared" the contents of the report with Petitioner. Respondent did not do so. Moreover, after Petitioner contended in his opposition that Davis had merely told him that the victim died of complications, Respondent had the opportunity to submit a supplemental declaration from Davis clarifying her earlier declaration and foreclosing

Petitioner's argument. Again, Respondent did not do so.

Because the apparently conflicting evidence can be reconciled by this latter interpretation, the Court finds Petitioner's version of events more persuasive than Respondent's by a preponderance of the evidence. Supporting this view is the fact that Petitioner evidenced a desire to withdraw his plea from the outset; however, it was not until he received his case file on September 5, 2001, that he began his "round" of state court habeas proceedings. That Petitioner initiated and proceeded through this round of petitions with such dispatch and efficiency, completing the entire round in approximately eleven months from inception, and did so only after receiving his case file, suggests that information in the file itself was the catalyst and factual predicate that Petitioner required to further his long-standing goal of setting aside his guilty plea.

Further supporting Petitioner's version of events is Davis's statement at the sentencing hearing. Her reference to a tragedy "magnified" by the fact that the victim would not have died but for "complications at the hospital" omits any specific references to the contents of the autopsy report while at the same time directly parroting Petitioner's recollection that Davis only told him that the victim had died from "complications" without telling him the specific findings as to the precise cause of death. Thus, based on all of the evidence in this record, the Court finds that **Petitioner** did not learn of the specific findings in the autopsy report until September 5, 2001.

### 2. *Petitioner's Due Diligence*

**\*8 Petitioner** indicates that he made several attempts to **obtain** his trial counsel's **files** between the time his failed attempts to appeal were rejected and September 5, 2001. (Doc. 9, p. 3; Doc. 38, p. 2). After **Petitioner** wrote to Davis in July 1999,[FN3] she replied explaining the circumstances that had resulted in the change of plea. (Doc. 38, Exh. G). Davis does not indicate to **Petitioner** that he had a right to his own **file**. (*Id.*). Subsequently, in August 2001, **Petitioner** wrote to the public defender's office requesting his **file** again. After an exchange of letters, his **file** was received by **Petitioner** on September 5, 2001. In light of the foregoing, while the Court does not find that **Petitioner** exhibited the "maximum feasible

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 845734 (E.D.Cal.)

(Cite as: 2006 WL 845734 (E.D.Cal.))

diligence" in attempting to **obtain** his **file**, he nevertheless did exhibit "reasonable **diligence** in the circumstances." *Schlueter,* 384 F.3d at 74. Since, as discussed *supra,* the factual predicate for **Petitioner's** claims were contained in the autopsy report, and since the Court has already found that **Petitioner** did not discover the factual predicate to the claims in the instant petition until September 5, 2001, when the autopsy report was transmitted to him along with the rest of his case **file**, **Petitioner** has satisfied the **requirements** for invoking section **2244( d)( 1)( D)**. Thus, the one-year period did not commence to run until September 5, 2001. *Hasan,* 254 F.3d at 1154.

> FN3. A copy of that letter is not in the record; hence, the Court has no knowledge of its contents except for the inferences that can be drawn based on Davis's responsive letter.

*D. Equitable Tolling*

Petitioner also maintains that the one-year period should be equitably tolled until he received his entire court file on September 5, 2001. Respondent does not address this issue.

The limitation period is subject to equitable tolling if "extraordinary circumstances beyond a prisoner's control" have made it impossible for the petition to be filed on time. *Spitsyn v. Moore,* 345 F.3d 796, 799 (9th Cir.2003)(internal quotation marks and citations omitted); *Calderon v. United States District Court for the Central District of California (Beeler),* 128 F.3d 1283, 1288 (9th Cir.1997), *overruled on other grounds* by *Calderon v. U.S. District Court (Kelly ),* 163 F.3d 530 (9th Cir.1998), itself *overruled on other grounds* by *Woodford v. Garceau,* 538 U.S. 202, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003)(noting that "[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time"). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." *Lott v. Mueller,* 304 F.3d 918, 922 (9th Cir.2002) (quoting *Miles v. Prunty,* 187 F.3d 1104, 1107 (9th Cir.1999)). In order to invoke equitable tolling, a prisoner must demonstrate that "extraordinary circumstances beyond [his] control" made it "impossible to file a petition on time." *(Beeler ),* 128 F.3d at 1288. In *Allen v. Lewis,*

255 F.3d 798, 801 (9th Cir.2001), the Ninth Circuit concluded that the petitioner "must show that the 'extraordinary circumstances' were the but-for and proximate cause of his untimeliness." Recently, the Ninth Circuit reaffirmed this rule in *Espinoza-Matthews v. California,* 432 F.3d 1021, 1026 (9th Cir.2005). In that case, the Court pointed out that the determination vis-a-vis equitable tolling is "highly fact-dependent" and that the petitioner "bears the burden of showing that equitable tolling is appropriate." *Id.*

**\*9** At the same time, the Ninth Circuit noted the United States Supreme Court's decision in *Pace v. DiGuglielmo,* 544 U.S. 408, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005), in which the Supreme Court framed the equitable tolling standard "in less absolute terms":

> "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."

*Espinoza-Matthews,* 432 F.3d at 1026, fn. 5, quoting *Pace,* 125 S.Ct. at 1814. The Ninth Circuit declined to decide whether *Pace* had "lowered the bar somewhat" because the Ninth Circuit concluded that **petitioner** had met the "more demanding" articulation found in the Ninth Circuit case law. *Id.* at 1027.

**Petitioner** claims that extraordinary circumstances prevented him from timely **filing** his federal petition. (Doc. 37, p. 13-14). Specifically, **Petitioner** refers to the autopsy report contained in his **trial court file** received on September 5, 2001. To that extent, there is a significant overlap between the argument **Petitioner** makes for equitable tolling and his argument for tolling pursuant to section **2244( d)( 1)( D)**. Having already found that **Petitioner** did not know of the specific contents of the autopsy report until he received them on September 5, 2001, the same conclusion would necessarily follow regarding equitable tolling.

However, the test for equitable tolling is different from section **2244( d)( 1)( D)**. As mentioned, to establish equitable tolling a **petitioner** must show that he has pursued his rights **diligently** and that some extraordinary circumstance stood in his way. *Espinoza-Matthews,* 432

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 845734 (E.D.Cal.)

(Cite as: 2006 WL 845734 (E.D.Cal.))

F.3d at 1026, fn. 5. The Court has already considered **Petitioner's due diligence** in attempting to **obtain** his case **file** and has found that **Petitioner** has exercised reasonable **diligence** under the circumstances. The remaining question is whether lack of access to his case **file** is an "extraordinary circumstance" justifying equitable tolling. In the Court's view, it is.

In *Lott v. Mueller,* the Ninth Circuit concluded that, if established, denying a **petitioner** access to his legal **files** during two temporary transfers that lasted 82 days would "appear to satisfy the 'extraordinary circumstances' **requirement** for equitable tolling." *Lott,* 304 F.3d at 924. In so holding, the Court noted that a "temporary deprivation of an inmate's legal materials does not, in all cases, rise to a constitutional deprivation." 304 F.3d at 925 (*quoting Vigliotto v. Terry,* 873 F.2d 1201, 1202-1203 (9th Cir.1989)(ruling that a three day deprivation does not rise to constitutional proportions).

Here, however, Petitioner was denied access to essential information from the conclusion of state court criminal proceedings in December 1998 until the file was delivered to him on September 5, 2001. As in *Lott,* such a lengthy delay would appear to satisfy the "extraordinary circumstances" requirement for applying equitable tolling.

**\*10** Thus, because Petitioner has established diligence in pursuing his rights and the existence of extraordinary circumstances preventing the filing of the claims deriving from the actual cause of death, Petitioner is entitled to equitable tolling until September 5, 2001. *Pace,* 125 S.Ct. at 1814.

E. *"Actual Innocence" Under Schlup v. Delo*

Neither the Supreme Court nor the Ninth Circuit has expressly held that there is an actual innocence exception to a violation of section 2244(d)'s limitation period. *Majov v. Roe,* 296 F.3d 770, 776 (9th Cir.2002). To date, the Ninth Circuit has only excused a violation of the limitation period in cases where the petitioner was entitled to equitable tolling. *See, Calderon v. United States Dist. Court (Beeler),* 128 F.3d 1283, 1287-89 (9th Cir.1997), *overruled on other grounds* by *Calderon v. U.S. District Court (Kelly ),* 163 F.3d 530 (9th Cir.1998), *itself overruled on other grounds* by *Woodford v. Garceau,* 538

U.S. 202, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003)

Under the actual innocence gateway of *Schlup v. Delo,* 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), decided before the enactment of the AEDPA, a petitioner's procedurally barred claim may be considered on the merits if his claim of actual innocence is sufficient to implicate a fundamental miscarriage of justice. *See Majov v. Roe,* 296 F.3d at 775-776; *Carriger v. Stewart,* 132 F.3d 463, 477 (9th Cir.1997). In order to satisfy *Schlup,* a petitioner must establish that "in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *Majov,* 296 F.3d at 776 (quoting *Schlup,* 513 U.S. at 316); *Sistrunk v. Aremankis,* 292 F.3d 669, 673 (9th Cir.2002).

In *Schlup,* the Supreme Court cautioned that to be credible, a claim of actual innocence requires the "petitioner to support his allegations of constitutional error with new reliable evidence ... that was not presented at trial." *Schlup,* 513 U.S. at 324; *Majov,* 296 F.3d at 776. In *Griffin v. Johnson,* 350 F.3d 956, 963 (9th Cir.2003), the Ninth Circuit held that "habeas petitioners may pass *Schlup'* s test by offering 'newly presented' evidence of actual innocence," rather than having to meet the more difficult "newly discovered" evidence standard. Thus, in *Griffin,* the Ninth Circuit indicated that it was proper to consider evidence that was in Petitioner's possession prior to trial but never offered prior to accepting his plea bargain. *Id.* Therefore, the autopsy report in this case, and any other evidence contained in the trial court file that was not "presented" to the state court, would be "newly presented" evidence under *Griffin,* and thus would satisfy *Schlup, if* such evidence established that it was more likely than not that no reasonable person would have found Petitioner guilty beyond a reasonable doubt, and *if* the *Schlup* gateway survives the enactment of the AEDPA. *Majov,* 296 F.3d at 776.

**\*11** Adding to the uncertainty on this issue, the Ninth Circuit has not definitively decided whether the "more likely than not" standard in *Schlup* has been superceded by the "clear and convincing" standard of the AEDPA's section 2254(e)(2), in determining whether a petitioner is entitled to relief. In *Majov,* the Ninth Circuit applied *Schlup'* s "more likely than not" standard, and remanded for an evidentiary hearing without reference to section

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 845734 (E.D.Cal.)

(Cite as: 2006 WL 845734 (E.D.Cal.))

2254(e)(2). *Majoy, 296 F.3d at 776-777.* In *Sistrunk,* decided one month before *Majoy,* the Ninth Circuit declined to decide whether Schlup survives the AEDPA, including section 2254(e)(2), because the petitioner did not seek an evidentiary hearing. *Sistrunk,* 292 F.3d at 673, fn. 3. In *Jaramillo v. Stewart,* 340 F.3d 877, 881-882 (9th Cir.2003), the Ninth Circuit found that section 2254(e)(2) did not apply to petitioner Jaramillo because he had been "diligent in his attempt to develop the factual basis of his claim." 340 F.3d at 882. However, these issues remain unresolved.

In light of the unsettled law in this area, and because the Court has already found that two separate statutory bases exist to toll the one-year limitation period here, thus making the petition timely, it is unnecessary for this Court to address the constitutional questions inherent in an "actual innocence" argument. *See Lott,* 304 F.3d at 925 (refusing to address question of whether deprivation of inmate's legal materials is of constitutional dimensions until the issue of equitable tolling has been resolved by the district court); *Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985) ("Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision. This is a fundamental rule of judicial restraint."); *United States v. Kaluna,* 192 F.3d 1188, 1197 (9th Cir.1999)(restating the "well-established" maxim that "courts are not 'to decide questions of a constitutional nature unless absolutely necessary to a decision of the case' ") (*quoting Burton v. United States,* 196 U.S. 283, 295, 25 S.Ct. 243, 49 L.Ed. 482 (1905)).

*F. Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)*

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period. 28 U.S.C. § 2244(d)(2).

In *Nino v. Galaza,* the Ninth Circuit held that the "statute of limitations is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge." FN4 *Nino v. Galaza,* 183 F.3d 1003, 1006 (9th Cir.1999), *cert.*

denied, 529 U.S. 1104, 120 S.Ct. 1846, 146 L.Ed.2d 787 (2000); *see, also, Taylor v. Lee,* 186 F.3d 557 (4th Cir.1999); *Barnett v. Lemaster,* 167 F.3d 1321, 1323 (10th Cir.1999). The Court reasoned that tolling the limitations period during the time a petitioner is preparing his petition to file at the next appellate level reinforces the need to present all claims to the state courts first and will prevent the premature filing of federal petitions out of concern that the limitation period will end before all claims can be presented to the state supreme court. *Id.* at 1005. However, the limitations period is not tolled for the time such an application is pending in federal court. *Duncan v. Walker,* 533 U.S. 167, 181-182, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001).

> **FN4.** In California, the Supreme Court, intermediate Courts of Appeal, and Superior Courts all have original habeas corpus jurisdiction. *See, Nino, 183 F.3d at 1006, n. 2.* Although a Superior Court order denying habeas corpus relief is non-appealable, a state prisoner may file a new habeas corpus petition in the Court of Appeal. *Id.* If the Court of Appeal denies relief, the petitioner may seek review in the California Supreme Court by way of a petition for review, or may instead file an original habeas petition in the Supreme Court. *See, id.*

**\*12** Petitioner filed his first collateral action in the Tuolumne County Superior Court on May 9, 2002, approximately three-and-one-half years *after* his judgment became final on December 22, 1998. (Doc. 8, Exh. B). Since a petitioner is not entitled to tolling for the period between finality and the filing of an application for post-conviction or other collateral review in state court, *Nino, 183 F.3d at 1006-1007,* at the time the Petitioner filed the first state habeas petition, his one-year limitation period would have already expired, unless it was extended by other tolling provisions. If Petitioner's one-year statute had expired, the state collateral action cannot revive it. *Jiminez v. Rice,* 276 F.3d 478, 482 (9th Cir.2001). Therefore, unless Petitioner is entitled to some form of tolling *until* May 9, 2001, none of Petitioner's collateral challenges would have had any statutory tolling consequences for purposes of the one-year limitation period in the AEDPA. *Green v. White,* 223 F.3d 1001,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 845734 (E.D.Cal.)

(Cite as: 2006 WL 845734 (E.D.Cal.))

1003 (9th Cir.2000) (Petitioner is not entitled to tolling where the limitation period has already run prior to filing state habeas proceedings); *see Webster v. Moore,* 199 F.3d 1256, 1259 (11th Cir.2000)(same); *Jackson v. Dormire,* 180 F.3d 919, 920 (9th Cir.1999)(petitioner fails to exhaust claims raised in state habeas corpus filed after expiration of the one-year limitation period.).

Here, as discussed *supra,* the Court finds that Petitioner was entitled to equitable tolling and tolling pursuant to 28 U.S.C. § 2244(d)(1)(D), until September 5, 2001. Thus, the one-year AEDPA period would expire on September 5, 2002. Accordingly, the one-year period had *not* expired when Petitioner filed his first state habeas proceeding on May 9, 2002. As of that date, Petitioner had used 246 of his 365 days. There being no dispute that each of Petitioner's three state habeas petitions were "properly filed," Petitioner was therefore entitled to statutory tolling from May 9, 2002, when he filed his collateral action in the superior court, until April 30, 2003, when his habeas petition was denied by the California Supreme Court. (Doc. 8, Exh. G). 28 U.S.C. § 2244(d)(2); *Lott v. Mueller,* 304 F.3d at 921. Petitioner filed the instant petition on June 16, 2003, 47 days after the denial by the California Supreme Court of his last collateral review in state court. Thus, at the time the instant petition was filed, the total amount of Petitioner's non-tolled time was 293 days. This means that the petition was timely and, accordingly, Respondent's Motion to Dismiss must be denied.

### *ORDER*

Based on the foregoing, the Court HEREBY ORDERS as follows:

1. Respondent's renewed Motion to Dismiss (Doc. 28), is DENIED; and,

2. Respondent SHALL FILE an ANSWER addressing the merits of the Petitioner's Petition within NINETY (90) days of the *date of service* of this order. Rule 4, Rules Governing Section 2254 Cases; *Cluchette v. Rushen,* 770 F.2d 1469, 1473-1474 (9th Cir.1985) (court has discretion to fix time for filing an Answer.).

**\*13** 3. Respondent SHALL INCLUDE with the Answer any and all transcripts or other documents necessary for the resolution of the issues presented in the Petitioner's Petition. Rule 5 of the Rules Governing Section 2254 Cases.

4. Any argument by Respondent that Petitioner has procedurally defaulted a claim(s) SHALL BE MADE in an ANSWER that also addresses the merits of the claims asserted. This is to enable the Court to determine whether Petitioner meets an exception to procedural default. *See, Paradis v. Arave,* 130 F.3d 385, 396 (9th Cir.1997) (Procedurally defaulted claims may be reviewed on the merits to serve the ends of justice); *Jones v. Delo,* 56 F.3d 878 (8th Cir.1995) (the answer to the question that it is more likely than not that no reasonable juror fairly considering all the evidence, including the new evidence, would have found Petitioner guilty beyond a reasonable doubt necessarily requires a review of the merits).

5. Petitioner's TRAVERSE, if any, is due THIRTY (30) days from the date Respondent's Answer is filed with the Court.

6. The Clerk of the Court is DIRECTED to SERVE a copy of this order on the Attorney General or his representative.

All motions shall be submitted on the record and briefs filed without oral argument unless otherwise ordered by the Court. Local Rule 78-230(h). All provisions of Local Rule 11-110 are applicable to this order.

IT IS SO ORDERED.

E.D.Cal.,2006.

Williams v. Knowles
Not Reported in F.Supp.2d, 2006 WL 845734 (E.D.Cal.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.